UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

OLES JEAN-BAPTISTE,
    *Plaintiff*,

v.

RYAN FROEHLICH, ET AL.,
    *Defendants.*

No. 3:21-cv-1482 (VAB)

**RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

Oles Jean-Baptiste ("Plaintiff"), currently incarcerated at Osborn Correctional Institution, filed this *pro se* action asserting claims against the City of Norwich, the Norwich Police Department, and seven Norwich police officers.

Following initial review of the Second Amended Complaint, the case proceeded to service on two Fourth Amendment excessive force claims, one against Officer Ryan Froehlich ("Defendant") in his individual capacity, and the other against Officer Matthew Seidel, Sergeant Harrison Formiglio, Officer Elizabeth Harsley, Officer Benjamin Sawaryn, Officer James Mastroianni, and Officer Matthew Goddu[1] in their individual capacities, on Mr. Jean-Baptiste's allegation that he was dragged on the ground while unconscious, as well as state law assault and battery claims, based on the same incidents. *See* Initial Review Order—Second Am. Compl., ECF No. 25 at 12–13 (Merriam, U.S.D.J.).

The Defendants have filed a motion for summary judgment, and argue that Mr. Jean-Baptiste cannot establish the essential elements of his claims, some of the Defendants lack personal involvement in the claims, and all of them are protected by qualified immunity.

---

[1] Mr. Jean-Baptiste incorrectly spells the names of Defendants Sawaryn and Mastroianni in his Second Amended Complaint. The Court uses the correct spelling in this Order.

For the reasons that follow, the motion for summary judgment is **GRANTED** as to the Fourth Amendment claims against Defendants Sawaryn, Goddu, Seidel, Formiglio, Harsley, and Mastroianni and **DENIED** as to the claim against Officer Froehlich.

The Court declines to exercise supplemental jurisdiction over any state law claims against Defendants Sawaryn, Goddu, Seidel, Formiglio, Harsley, and Mastroianni. The state law assault and battery claim against Defendant Froehlich will proceed along with the Section 1983 excessive force claim.

I.   **FACTUAL ALLEGATIONS**[2]

On March 2, 2020, shortly after 5:00 p.m., Officer Froehlich was dispatched and responded to a call that a pink scooter, without a seat, had been stolen from Norwich Avenue. Defs.' Local Rule 56(a)1 Statement, ECF No. 108-2 ¶¶ 1–3. Officer Froehlich requested assistance, and a second officer, Officer Harsley, was dispatched to the call. *Id.* ¶ 4. Sergeant

---

[2] The factual allegations are taken from the Defendants' Local Rule 56(a)1 Statement and supporting exhibits. Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicating whether the opposing party admits or denies the facts set forth by the moving party. Each denial must include a specific citation to an affidavit or other admissible evidence. D. Conn. L. Civ. R. 56(a)3.

Although the Defendants informed Mr. Jean-Baptiste of his obligation to respond to the motion for summary judgment and the contents of a proper response, *see* Defs.' Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment Filing, ECF No. 109, Mr. Jean-Baptiste has not filed a Local Rule 56(a)2 Statement with his opposition papers.

Even though Mr. Jean-Baptiste is unrepresented, he is not excused from complying with the Court's procedural and substantive rules. *See Evans v. Kirkpatrick*, No. 08-CV-6358T, 2013 WL 638735, at *1 (W.D.N.Y. Feb. 20, 2013) (citing *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006); *see also Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 214 (N.D.N.Y. 2008) ("when a plaintiff is proceeding *pro se*, all normal rules of pleading are not absolutely suspended" (citation and internal quotation marks omitted)). Thus, the Defendants' facts, when supported by the evidence in the record, are deemed admitted. *See* D. Conn. L. Civ. R. 56(a)3 ("Failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming admitted certain facts that are supported by the evidence in accordance with Local Rule 56(a)1, or in the Court imposing sanctions. . . .").

2

Formiglio also was sent to the scene. *Id*. ¶ 5.

As Officer Froehlich was driving up Norwich Avenue, he saw an individual, later identified as Mr. Jean-Baptiste, controlling a pink scooter without a seat while sitting on the back of a second scooter that was driven by a person. Officer Froelich recognized this person as Mr. Bob Rodriguez. *Id*. ¶¶ 6–7. Officer Froehlich activated his emergency lights and pulled his vehicle in front of the scooters which caused the men to stop at the side of the road. *Id*. ¶ 8.

Officer Froehlich left his vehicle and approached the two men. *Id*. ¶ 9. He confirmed that the pink scooter did not have a seat and asked the men to move to the shoulder so they would not block traffic. *Id*. Mr. Jean-Baptiste became visibly upset when asked to move to the shoulder and, when asked, stated that the scooter was not his. *Id*. ¶ 10. Based on the missing seat, Mr. Jean-Baptiste's response, and the location, Officer Froehlich believed that the pink scooter was the one that had been reported stolen. *Id*. ¶ 11.

Officer Froehlich asked the men to sit on the ground so he could more easily watch and control their movements while he waited for other officers to arrive. *Id*. ¶ 12. Mr. Jean-Baptiste objected to this request and, when Officer Froehlich approached him, backed away and resisted Officer Froehlich's efforts to handcuff him until other officers arrived. *Id*. ¶ 13. Because of the level of resistance, Officer Froehlich thought it necessary to take Mr. Jean-Baptiste to the ground, which he did. *Id*. ¶ 14.

Once on the ground, Mr. Jean-Baptiste began actively fighting Officer Froehlich by throwing punches, scratching at Officer Froehlich, and biting Officer Froehlich on his left forearm. *Id*. ¶ 15. Officer Froehlich used several closed-fist strikes to get Mr. Jean-Baptiste to stop biting him and resisting the efforts to handcuff him. *Id*. ¶ 16. Instead of releasing Officer Froehlich, Mr. Jean-Baptiste bit down harder, causing Officer Froehlich to experience pain. *Id*. ¶

3

17.

Officer Froehlich then removed the cartridge from his taser and attempted to drive stun Mr. Jean-Baptiste in the chest area. *Id.* ¶¶ 18–19. This attempt was unsuccessful as Mr. Jean-Baptiste was wearing a heavy jacket. *Id.* ¶ 19. Officer Froehlich dropped the taser and continued to grapple with Mr. Jean-Baptiste to try to control his arms and body movements while waiting for other officers to arrive. *Id.* ¶¶ 20, 22. Officer Froehlich made a second attempt to drive stun Mr. Jean-Baptiste, this time in a bare-skinned area of his left shoulder/neck, but the attempt was ineffective. *Id.* ¶¶ 23–24. Mr. Jean-Baptiste continued to actively resist and scratched at Officer Froehlich's face and lips. *Id.* ¶ 24.

At some point during the struggle, Mr. Jean-Baptiste took two pens from Officer Froehlich's vest and held one in each hand as if to use them as weapons to stab at Officer Froehlich. *Id.* ¶ 25. Officer Froehlich could and did put his knees on Mr. Jean-Baptiste's arms and held his forearms down to prevent Mr. Jean-Baptiste from using the pens as weapons. *Id.* ¶ 26. Officer Froehlich continued to pin down Mr. Jean-Baptiste's arms until Sergeant Formiglio arrived at the scene. *Id.* ¶ 27.

Mr. Jean-Baptiste ignored multiple commands to drop the pens. *Id.* ¶ 29. Officer Froehlich forcibly removed the pens from Mr. Jean-Baptiste's hands after Sergeant Formiglio arrived. *Id.* ¶ 30. After the pens were removed, Officer Froehlich, Sergeant Formiglio and Officers Harsley and Sawaryn controlled Mr. Jean-Baptiste and placed him in handcuffs. *Id.* ¶ 31.

Officer Sawaryn then stood Mr. Jean-Baptiste up and walked him to a police cruiser for transport. *Id.* ¶ 32. Mr. Jean-Baptiste fell to his knees at one point. *Id.* ¶ 33. Officers Sawaryn and Goddu lifted him up, and walked him to the police cruiser . *Id.* At that time, the officers did not

believe that Mr. Jean-Baptiste had been unconscious. *Id*. ¶ 34.

## II.     STANDARD OF REVIEW

A motion for summary judgment may be granted only where "there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113–14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113–14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense . . . ." *Giordano v. Mkt. Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010). In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (quoting *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 296 (2d Cir. 2020)).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth "specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citation omitted). He cannot "rely on conclusory allegations or unsubstantiated speculation[.]" *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (citing *Brown*, 654 F.3d at 358). To defeat a motion for summary judgment, the nonmoving party must

present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the court is required to read a self-represented party's papers "liberally" and interpret them "to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

### III. DISCUSSION

The two remaining excessive force claims are as follows: (1) Officer Froehlich allegedly repeatedly tased Mr. Jean-Baptiste and punched him in the face; and (2) the other Defendants dragged Mr. Jean-Baptiste on the ground, while he was unconscious.

The Defendants move for summary judgment because Mr. Jean-Baptiste cannot establish the essential elements of his excessive force claims, some of the Defendants lack personal involvement in the claims, and all of the Defendants are protected by qualified immunity.

The Court will address each of the excessive claims as it relates to each of the Defendants.

#### A. The Fourth Amendment Excessive Force Claims

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest." *Jamison v. Metz*, 541 F. App'x 15, 19 (2d Cir. 2013) (summary order) (quoting *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir.2010)); *see also Jones v. Treubig*, 963 F.3d 214, 225 (2d Cir. 2020) (considering excessive force claims against police prior to arraignment under the Fourth Amendment).

"A police officer violates the Fourth Amendment if the amount of force he uses in

effectuating an arrest is objectively unreasonable in light of the facts and circumstances confronting the officer." *Lennox v. Miller*, 968 F.3d 150, 155 (2d Cir. 2020) (internal quotation marks, citation, and alterations omitted). Because the test is objective reasonableness, "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Graham v. Connor*, 490 U.S. 386, 397 (1989).

"Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation marks omitted). In particular, "[a] determination of whether the force used was reasonable requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Miller*, 968 F.3d at 155 (internal quotation marks and citation omitted).

"The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97 (internal quotation marks omitted). "In sum, the standard to be applied in determining whether the amount of force used exceeded the amount that was necessary in the particular circumstances is reasonableness at the moment." *Rogoz v. City of Hartford*, 796 F.3d

236, 247 (2d Cir. 2015) (internal quotation marks and citation omitted).

"In light of the fact-specific nature of the inquiry on an excessive force claim, granting summary judgment against a plaintiff on such a claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Miller*, 968 F.3d at 155 (internal quotation marks, citation, and alteration omitted).

Applying these standards to this record, the Court disagrees that summary judgment is warranted as to the claims against Officer Froehlich, but agrees that it is with respect to the other Defendants.

### 1. The Claims Against Officer Froehlich

Mr. Jean-Baptiste alleges that Officer Froehlich repeatedly tased him and punched him in the face. Officer Froehlich concedes that he used force against Mr. Jean-Baptiste, but argues that any force used was reasonable because Mr. Jean-Baptiste was refusing all commands, attempting to punch and scratch Officer Froehlich's face, biting his forearm hard enough to break the skin in several places, and trying to stab Officer Froehlich with two pens. Defendants contend that Officer Froehlich's version of the incident is supported by the video evidence submitted in support of their motion for summary judgment.

But, relying on the video evidence, and consistent with the applicable caselaw, "granting summary judgment against a plaintiff on such a claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Miller*, 968 F.3d at 155 (internal quotation marks, citation, and alteration omitted). The only available video evidence is the dashcam video from Officer Froehlich's police vehicle. Based on the video footage, Officer Froehlich applied several closed-fist strikes in a limited period of time. The video footage also shows Officer Froehlich trying to use his taser twice with Mr. Jean-Baptiste.

There is no clear view of Mr. Jean-Baptiste, however, while Officer Froehlich was applying the force. And, without a finder of fact, the Court cannot conclude whether Mr. Jean-Baptiste's actions required the specific use of force employed by Officer Froehlich. *See Rogoz*, 796 F.3d at 247 ("[T]he standard to be applied in determining whether the amount of force used exceeded the amount that was necessary in the particular circumstances is reasonableness at the moment." (internal quotation marks and citation omitted)); *see also* Defs.' Mem. Ex. E at 9:50–11:50 (the relevant video footage).

Accordingly, because a reasonable factfinder could conclude that Officer Froehlich's conduct was objectively unreasonable, Defendant's motion for summary judgment will be denied on the excessive force claim against Officer Froehlich.

### 2. The Claims Against the Other Defendants

To state a cognizable section 1983 claim, Mr. Jean-Batiste must allege facts showing the personal involvement of each defendant. *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (citation omitted). A police officer is personally involved in the use of excessive force if he used force himself or was present when force was used by another officer but did not intervene to protect the victim even though he had a reasonable opportunity to do so. *See Demosthene v. City of New York*, 831 F. App'x 530, 535 (2d Cir. 2020) (summary order). Mr. Jean-Baptiste's second excessive force claim is that all Defendants except Officer Froehlich dragged him on the ground to the police cruiser while he was unconscious.

But, on this record—the video evidence—only Officer Sawaryn, assisted by Officer Goddu, participated in taking Mr. Jean-Baptiste to the police cruiser. *See* Defs.' Mem. Ex. I at 4:05–4:15; Ex. J at 4:18–5:00; Ex. K at 4:10–4:30. In the absence of any record evidence of the personal involvement of Defendants Seidel, Formiglio, Harsley, and Mastroianni in taking Mr.

9

Jean-Baptiste to the police cruiser, the excessive force claims against them must be dismissed unless they had an opportunity to intervene while the other Defendants used excessive force. *See O'Neill v. Krzeminski*, 839 F.2d 9, 12 (2d Cir. 1988) (whether police officer should have intervened when plaintiff was dragged across the floor by his throat "is adequate to create an issue of fact for the jury"). As to the claims against Officers Sawaryn and Goddu, the alleged excessive use of force is based on their dragging Mr. Jean-Baptiste, while unconscious. Second Am. Compl., ECF No. 27 ¶¶ 10–17. The record evidence—again, the video evidence—shows that Mr. Jean-Baptiste was neither unconscious nor dragged by these police officers. *See* Defs.' Mem. Ex. I at 3:55–4:15 (Mr. Jean-Baptiste sits upright, speaks to officers, and walks to cruiser); Ex. K at 4:10–4:30 (Mr. Jean-Baptiste walking and struggling with Officer Sawayrn on way to police cruiser); Ex. J at 4:18–5:00 (Mr. Jean-Baptiste goes limp approximately one foot away from police cruiser door, and is lifted by Officers Sawaryn and Goddu towards cruiser); *Id.* at 5:17-5:30 (Mr. Jean-Baptiste holds feet against cruiser door to prevent officers from bringing him into the vehicle, and is seen speaking and yelling). Because Mr. Jean-Baptiste's testimony to the contrary cannot create a genuine issue of material fact, given the video evidence, *see Scott v. Harris*, 550 U.S. 372, 380–81 (2007) ("Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape."), on this record, a reasonable factfinder could conclude that the officers' conduct was objectively [ ]reasonable." *Miller*, 968 F.3d at 155 (internal quotation marks, citation, and alteration omitted).

Accordingly, the Defendants' motion for summary judgment as to the excessive force claims against Officer Matthew Seidel, Sergeant Harrison Formiglio, Officer Elizabeth Harsley,

Officer Benjamin Sawaryn, Officer James Mastroianni, and Officer Matthew Goddu in their individual capacities will be granted.

### B. Qualified Immunity

"[Q]ualified immunity protects government officials from suit if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013) (quoting *Harlow v. Fitzgerald*. 457 U.S. 800, 818 (1982)). "When a defendant invokes qualified immunity to support a motion for summary judgment, courts engage in a two-part inquiry: whether the facts shown 'make out a violation of a constitutional right,' and 'whether the right at issue was clearly established at the time of defendant's alleged misconduct.'" *Taravella v. Town v. Wolcott*, 599 F.3d 129, 133 (2d Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015) (quotation omitted). "Rights must be clearly established in a 'particularized' sense, rather than at a high level of generality," *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2917), and while "a case directly on point" is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

"Therefore, an official is entitled to qualified immunity if, considering the law that was clearly established at the time, the official's conduct was 'objectively legally reasonable.'" *Nazario v. Thibeault*, No. 3:21-cv-216(VLB), 2022 WL 2358504, at *8 (D. Conn. June 30, 2022) (quoting *Taravella*, 599 F.3d at 133). "The objective reasonableness of an official's conduct 'is a mixed question of law and fact.'" *Nazario*, 2022 WL 2358504 at *8 (quoting *Taravella*, 599 F.3d

11

at 134) "At the summary judgment stage, while a conclusion that an official's conduct 'was objectively reasonable as a matter of law may be appropriate where there is no dispute as to the material historical facts, if there is such a dispute, the factual question must be resolved by the factfinder.'" *Nazario*, 2022 WL 2358504 at *8 (quoting *Taravella*, 599 F.3d at 134).

Although, based on the analysis above, only the excessive force claim against Officer Froelich will remain in this case, all of the Defendants argue that they entitled to qualified immunity.

With the exception of Officer Froelich, the Court agrees.

Both the excessive force analysis and the qualified immunity analysis overlap as "both require an assessment of the objective reasonableness of the [defendant's] conduct." *Diaz v. City of Hartford Police Dep't*, No. 3:18-CV-01113(KAD), 2021 WL 1222187, at *5 (D. Conn. Mar. 31, 2021). In some excessive force cases, the qualified immunity and excessive force analyses converge on one question: "[w]hether in the particular circumstances faced by the officer, a reasonable officer would believe that the force employed was lawful." *Cowan ex rel. Est. of Cooper v. Breen*, 352 F.3d 756, 764 n.7 (2d Cir. 2003).

The Court has determined above that there are issues of fact, which cannot be clearly resolved with the video footage, regarding whether the force used by Officer Froehlich was objectively reasonable. As a result, this issue must be resolved by the factfinder.

Accordingly, Defendants' motion for summary judgment on the grounds of qualified immunity grounds will be denied as to Officer Froelich.

### C. The State Law Assault and Battery Claims

The district court has discretion to retain or decline supplemental jurisdiction over a state

law claim asserted against a defendant who has no federal claims pending against him. *Briarpatch Ltd., L.P. v, Phoenix Pictures, Inc,*, 373 F.3d 296, 308 (2d Cir. 2004) (noting that the court can exercise supplemental jurisdiction over a state law claim even if "asserted against a party different from the one named in the federal claim" but "[t]he fact that the district court has the power to hear these supplemental claims does not mean, of course, that it must do so. Instead, it may decline to exercise its power based on the factors laid out in 28 U.S.C. § 1367(c)."); *Kaplan v. County of Orange*, 528 F. Supp. 3d 141, 160–61 n.6 (S.D.N.Y. 2021) (declining to exercise jurisdiction over state law claims against certain defendants against whom no federal claims were pending; discussing discretion to do so; and collecting cases). Mr. Jean-Baptiste also asserts state law claims for assault and battery against all of the Defendants.

Because all of federal claims have been dismissed against Defendants Sawaryn, Goddu, Seidel, Formiglio, Harsley, and Mastroianni, the Court declines to exercise supplemental jurisdiction over the state law claims for assault and battery against them pursuant to 28 U.S.C. § 1367(c) . Because a federal claim remains against Officer Froelich, the Section 1983 excessive force claim, the Court will retain supplemental jurisdiction over the state law assault and battery claims against him.

### IV.     CONCLUSION

Defendants' motion for summary judgment [**ECF No. 108**] is **GRANTED** as to the Fourth Amendment claims against Defendants Sawaryn, Goddu, Seidel, Formiglio, Harsley, and Mastroianni and **DENIED** as to the claim against Officer Froehlich.

The Court declines to exercise supplemental jurisdiction over any state law claims against Defendants Sawaryn, Goddu, Seidel, Formiglio, Harsley, and Mastroianni. The state law assault and battery claim against Defendant Froehlich will proceed along with the Section 1983

excessive force claim.

    **SO ORDERED** at New Haven, Connecticut, this 25th day of October, 2024.

                                                /s/ Victor A. Bolden
                                                VICTOR A. BOLDEN
                                                UNITED STATES DISTRICT JUDGE